Good morning your honors. Josh Kendrick on behalf of appellant Mary Mooney. Ms. Mooney has presented three claims in this court. The government has moved to dismiss the appeal on all three grounds under an appellate waiver argument. So that's been fairly extensively briefed. We've responded to their motion prior to any briefing and then I've also included in the brief in each argument why each of these arguments falls outside the scope of the appellate waiver. For the argument this was an invalid guilty plea because she essentially pled guilty to a statute that did not apply to her conduct based on the effective timing of the statute, who that statute specifically applies to, and when her conduct occurred. I believe that's very similar to McCoy. We filed that as a supplemental authority letter a couple days ago where this court held that a challenge to the factual basis that a plea would fall outside the scope of an appellate waiver is so intertwined with whether the plea was knowing and voluntary and there's a suggestion of coercion or misunderstanding when there's a problem with the factual basis. I think this is simply the other side of that coin that if the law didn't apply to the person the same thing happens. There's some misunderstanding in the overall plea. So for that reason that issue falls outside the appellate waiver. The final two issues we bring. Sentencing claims are typically going to fall within an appellate waiver. We draw a distinction in this case because the judge's sentence was not based on any evidence presented to the court. So it's a little bit different than an application of the guidelines or something that is reasonably foreseeable, a decision we just simply didn't agree with. In this case there's no way to tell that he was going to essentially base a loss amount with nothing on the record about where that loss came from and the restitution argument is very similar. So starting with the application of the statute I think we probably belabored the history of this matter a little bit in our brief so we're not going to go back through that but it involves Hague Convention adoptions which for the adoption to take place would require the United States which we agree is a Hague Convention country and then the partner country where the adoption was coming from to also be a party to the Hague Convention. Isn't an accreditation under the statute a benefit to an adoptive agency whether or not the countries involved in the adoption are signatories to the Hague Convention and isn't there evidence in the record that there was a benefit to the practices in Kazakhstan? So I think there's a couple answers to that and the first one in candors yes any time you can mark yourself as having been accredited or approved there could potentially be a benefit. The problem that you bring up at the last part of your question is that and this was apparent throughout the record that there is no indication Kazakhstan ever did in fact require this accreditation. That came from an affidavit by a co-defendant. A sworn testimony that was properly before the court, correct? There was never any backup for why he said that. We weren't able to ask him why he said that because he never testified live but he just said in 2008 they were going to start requiring accreditation. What we were able to find when we looked back at the Department of State website was there was really no information to support the fact that Kazakhstan was requiring accreditation and in fact I think what we were able to show was that there never were any adoptions. So as of a couple days ago when I checked the Department of State website again it doesn't look like there's ever actually been any Hague if you will adoptions or adoptions after the time period we are talking about. So he said it but the facts we were able to show maybe show that I don't think he had anything to base that opinion on and then what we brought up more extensively in the reply brief that is apparent from the record a lot of the adoptions that were done in this case took place before even the Hague would have decided to take accreditation if they were going to take accreditation but certainly before they ever became a partner to the Hague Convention if they in fact did and I have found on the Department of State website somewhat competing information about whether Kazakhstan ever in fact joined the Hague. I mean it does seem like they are in one place listed as a partner to the Hague Convention on adoption but there's certainly another section of the Department of State website that shows they're not a partner. So I don't think it's clear and I think that that becomes critically important because this statute has a specific purpose and when we're getting into interpreting it we look at its plain language and there's nothing unclear about it. It applies to someone who is seeking an accreditation or approval under Title 2 and then when you go to Title 2 we see that what that does is dictates that these are country adoption providers offering or providing an actual Hague adoption and then it's reported in 2013 when the law is modified to say now we want this enforcement procedure to apply to everybody regardless of whether you were doing a Hague adoption. Yes, but it's confusing for me as you say we're starting with the text of the statute and it says you can't make a false statement with respect intended to influence or affect a decision by an accrediting entity under Subchapter 2 and you go to Subchapter 2 and you see all about this process for accreditation and approval and I just don't understand how that language doesn't describe what happened here. I think that because if it stopped where you started which is a misstatement or material misrepresentation then you end up with a broad sort of false statement statute. It's a false or fraudulent statement in connection with the accreditation of an agency under Subchapter 2. And when you go to Subchapter 2 what happens is Subchapter 2 is defining the people subject to this enforcement action as those providing adoptions under the Hague Convention. It just says who's required to get one of these accreditations and then it marches through this, Subchapter 2 is quite long, it marches through this whole process of how you get accredited and it does say who's required to be accredited but it doesn't say anything that says like P.S. nothing in this chapter applies if you apply for accreditation but you don't need it. But they come back in 2013 and it would seem they do in fact say that because they now say this enforcement is going to apply and I think the focus is the statute is focused on the person's actions with the accreditation and what I think your honor is focusing on is maybe the person in general so so the statute is very specifically targeted towards people who are in fact providing these documents or these adoptions and that Congress's intent was to say look if you need accreditation we don't want you lying to the agencies we don't want these accreditations being given out on false pretenses if you don't need it that's fine lie away get your certificate put it on your marketing materials we've got no issue with that you think that was Congress's intent? I suspect that it was not but there is not a lot of legislative history here but I think the problem we keep running into is that if the language is clear which we believe it is then we never get to that we never get to any of the other canons of statutory interpretation without assume I will assume only for the purposes of argument that the language were ambiguous I mean that would be an absurd result it would also mean that in under your reading as I understand it until you start actually doing these adoptions you're not covered by a false if you make a false statement so that your first set of false statements to get your initial accreditation before you start doing the adoptions that would be a free pass if you do it to renew your accreditation that would be when you're covered by the statute. So I think there's a couple issues there and the first one is that I don't think you end up in the absurd result world if we have to twist the statute we have to essentially change the wording of it to say that it doesn't just apply to people under title 2 it applies to everyone which when it was enacted it didn't say that and then later in 2013 well after the dates of any of these adoptions it came back and did in fact say what you are now saying which is look the enforcement provisions apply to not only the adoption providers that are doing Hague adoptions but that are not doing Hague adoptions they're doing anything related international adoption so so that's intended or not that is what the clear language as written says and then Congress came back in 2013 and equally as clearly changed it to now cover a much broader swath of people. Don't we have you kind of moved past the history of some of this and but isn't it significant that your client was facing a bundle of risk associated with the prosecution the indictment that she was facing that she came to the government and asked to the statements that she felt were the ones where she made misrepresentations and then admitted that she's lying pursuant to those I mean how do we I mean that seems such a different situation than McCoy which was it looked like a error in transcription maybe or whatever of the amounts I just don't understand how McCoy helps other than I guess the that the narrow holding the factual basis could be outside the plea of course there is a factual basis here I know you dispute that but there's evidence of her lying admitted she's lying and documents which would at least support that. So there's a couple answers to that and then we'll start with a simple one which is that at the record is the government basically says she came to us and asked for this plea what Ms. Mooney said in a sworn affidavit that was submitted to the district court in support of her motion withdraws that is not the case that this idea came up right before jury selection and she didn't think her lawyer was ready for trial her lawyer candidly admits that he hadn't looked at these laws that he was extremely busy that he was almost unable to handle the sheer volume of the case which is extensive within the appendix is a tiny fraction of what what ultimately was there to go through so as a factual matter I don't think it really makes any difference because we have an attorney for the government saying one thing we have a defendant saying the other thing and it doesn't really make a difference I mean whether she went to them or they came to her if the law doesn't apply then I think that that puts us in a similar boat to McCoy that you are essentially allowing someone to plead guilty to something that is not illegal which doesn't come up that often but you know but when it does we call it a constitutional error right it's like you're not allowed to plead guilty to something that's not in fact a crime and when you do we say that that is not a valid plea under Boosley because it's not knowing and intelligent and there's a constitutional problem right and I think that idea there is that you can't be held accountable number one to an appellate waiver you can't be held accountable to the idea that a plea waives those rights or anything else I think it I think it is arguable I also think that the other part of this that we we also brief fairly extensively and I don't have an explanation because I wasn't the lawyer in the district court but or I wasn't at the time of the plea I was at sentencing you know miss Mooney says that even when she did make that admission but the actual facts of the matter are that what she pled guilty to was in fact not really the case so the government goes through a pretty long part of their brief about mr. Harding being completely unqualified to serve as the head of an adoption agency and that's simply not the case under the regulations he was in fact qualified to be the executive director so she pled guilty in addition to a law that may not have applied to her she also pled on the basis that she had said something which in fact was not a false statement and I think it's telling that one of the statements she pled guilty to even the government later agrees well yeah that definitely doesn't apply at all because that took place long before any of these laws passed there certainly was something going on at this plea where no one was paying careful attention to the statements or the statute under which she was pleading thank you mr. Attinger thank you may it please the court Derek Attinger on behalf of the United States the government here argues that the court should grant its motion to dismiss this appeal on the grounds of the appellate waiver can you explain to me why the claim that the defendant pled guilty to something that is not a crime would fall within the waiver I thought we had a bunch of cases saying that or a motion to withdraw includes a colorable claim of a constitutional problem there's no bar to the appeal and I think here the argument would be that sort of legal innocence theory under cases like Boosley that it's not knowing and intelligent to plead guilty to something that's not a crime in this case the government would argue that it is important for the court to satisfy itself that the for you to satisfy yourselves that the defendant pled guilty to a crime that is legally capable but as soon as you have done that the appellate waiver kicks in and the rest of the and I'd be happy to can I ask you can I also ask you a question about the restitution order because I think we've also said in some cases that if a court it kind of exceeds its statutory authority under arrest to under the restitution statute that might fall outside a plea waiver and it does look here to me at least like the district court use the agency's gains gross receipts as a proxy for victim loss and we have said in cases like Harvey that you can't do that so so why is why do we not have sort of a potential problem under the restitution on the restitution side of things that might fall outside the plea waiver so a restitution typically is considered part of a sentence that falls within the statute and the the examples of cases where a court exceeds its authority to to award restitution is where there is no statute that supports it and in this case this is question about how the court calculated the loss and in terms of calculation those are things that fall squarely within an appellate waiver but but can I can I go back if you're if you're done with that line of questioning to a discussion of why title 42 USC 14944 did legally apply to the appellant this is a classic false statement statute what she pled to is making a false statement in order to receive a government benefit and it doesn't make any difference at all whether she planned to use that government benefit she received the government benefit and she was legally prohibited from lying to obtain it so a similar statute would be 1856 1542 which prohibits lying in order to receive a passport so just as accreditation is necessary in order to conduct Hague Convention adoptions and a passport is necessary in order to travel internationally you can violate the statute that prohibits lying in order to get a passport even if you don't plan to travel internationally it doesn't matter what you use it for you can put it on your wall you can use it to show off to your friends to show that you're you like to travel you don't have to use it if you lie to obtain it you violated the statute and the same thing is true here and I think the court put its finger at Judge Harris you put your finger on the the exact issue as to why Congress would have not why we can't interpret the statute in a way that the appellant urges and the reason is that the whole purpose of the requirement of accreditation is to to take agencies that want to conduct Hague Convention adoptions but by hypothesis are not yet doing so because they need to be accredited to do so and require them to get accreditation in order to make those adoptions under the appellant's interpretation when they apply for that accreditation because of course they're not yet conducting the Hague Convention adoptions there would be nothing preventing them from lying or making misrepresentations in order to get the accreditation and and that is an absurd result now the the appellant makes a lot out of the adoption of the Universal Accreditation Act which essentially said look originally we were requiring accreditation for any Hague country adoption now we're requiring accreditation for any adoption from any country and the appellant says that means that before the statute only applied when Hague Convention adoptions were being conducted but that of course has no impact whatsoever on the false statement statute which would apply either way and I think the best analogy to show that would be to stick with the passport example we now need a passport to travel internationally but if Congress putting aside any constitutional concerns with this passed a law that said you need a passport to travel domestically from state to state well now you would need a passport that the requirements for a passport would have been broadened you would need it to do more things but it wouldn't affect one way or another whether you could lie in order to obtain your passport now or whether you were able to lie to obtain your passport prior to the expansion of their requirements so the same thing holds true here. Do you have any further questions? No. Thank you sir. Thank you. You have some rebuttal time. May I be permitted to make one more point? Pardon me? May I be permitted to make one more point? Sure. Thank you. I just wanted to respond to the defendant did not approach the government to make the suggested plea offer and point you to the record on page 123 where the government stands up an open court in front of the district court explains what happens with the defendant in the room and her lawyer and there are no objections made. Thank you. Just to start quickly almost where where Mr. Edger left off there the statutes he refers to and asks you to think about with passports and things like that do not have a built-in limiting class to them like this statute does and I would turn your attention to Joint Appendix 379 which is the signature of Ms. Mooney as well as the head of the board which is kind of forms the basis for this our Hague Adoption Service programs are and have at all times during the last year remained in substantial compliance with the Hague approval standards. I also attest to the truth and accuracy made in this document about our Hague Intercountry Adoption Service program. So if you take that language which is the form that the Council on Accreditation is using to have the attestations made and you compare that and and combine your interpretation with the statute which is clearly applying to an active Hague adoption program then that you end up exactly where we've said you end up. Whether we agree with that or think that that's a wise law I think this court is constantly confronted with statutes that you decline to rewrite for Congress and if they have imprecisely attempted to do something it's not within our purview to try to to fix that we simply read them as as it comes to us and in this case Congress in fact did come back and fix the problem that they had. So when you're talking about this being a general false statement or a typical false statement statute it certainly isn't because it has a limiting condition that must be met so that this particular statute only applies to a certain class of people of whom Ms. Mooney was not. So essentially the statute didn't apply to her but I think just briefly on rebuttal that the other issue we have from a factual standpoint is and this kind of bleeds in we really do believe that the loss here can be considered by your honors as falling outside the scope of the appellate waiver and the if I'm able to foreseeably tell a client a statute may or may not our guideline may or may not apply at sentencing a fact may or may not come into play at sentencing then it's it's reasonable that you can waive your ability to later complain about that but when the district court doesn't take any evidence to calculate a loss then now you have a failing that I think is far more fundamental to the sentencing process but also that could have never been foreseen by either party I mean if you were to take a drug case and the judge said I'm just gonna sentence you on another type of drug because I know drug dealers like to mix it up with the drugs and you probably had that one that's equivalent to what happened here no one from Kazakhstan ever none of these families that adopted from Kazakhstan ever contacted the government they never asked the government to do anything for them I mean there's evidence throughout the record where they didn't it doesn't look like they I've certainly been the victim at sentencing of these hearsay issues where one agent comes in and says I spoke to ten people and here's what they said and I agree that the court will allow that we never even made it there in this case if you will look through the sentencing transcript there are times and at one point the district court judge says yeah but I mean surely they didn't want the adoptions to be done this way he doesn't cite a person that said that no person did say that I mean you have an utter failure of considering any information so the restitution issue I think is clearly outside the appellate waiver because a restitution award higher than allowed is the same as a sentence that's in excess of the statutory maximum which there's no question we could never be waived but at the same time when you look at the fact that what happened here is we have a loss there was really literally nothing we could have done to challenge the loss because there was not a single witness who ever got up and they were misled in any way in fact they wouldn't have been able to because if you look at the dates which are so critical all of these adoptions started before the earliest false statement that was used to support the guilty plea so every single one of the adoptions was done contemplated and essentially completed with absolutely no relationship between that adoption and type of accreditation so without I mean essentially what the district court did here I mean I think whim is the word that the appellate courts have used but essentially what it means is capricious unpredictable a sort of volatile type thing that we couldn't have foreseen and that really is what happened here there's simply not a shred of evidence to allow for a loss calculation from families who apparently never offered a shred of information to anybody at one point I think the government even says well the Ethiopian families early on told us that they felt misled so surely the other families must have felt misled too that isn't even a hearsay preponderance of the evidence type statement it's just simply attorney arguments so I think that that where where this court is allowed to consider a sentence even in the face of an appellate waiver is when there is such a clear failing to present any evidence to look at the evidence in the wrong way there simply wasn't any and there's a part in the sentencing where I I think I actually tell the district court judge there's just no one here who are we talking about who are these people that feel misled who are these people that feel like they suffered some loss and where is a single adoption that we can show is flawed and the government has admitted throughout the record not a single one was flawed they were all done exactly as they should have been done and if you combine that with the fact that they were all started well before any alleged fault statements were made you simply don't have criminal activity here she should have been allowed to withdraw her plea and in response to Judge Quattlebaum's question earlier about sort of the risk she faced that was something the government brought up but two co-defendants that they talked about throughout their brief and they didn't get really much time at all so I don't know that that risk was overwhelming she made a bad decision that by itself is never going to be a reason to get through to this court to fix the error but it wasn't just a bad decision it was a decision founded upon such a fundamental misunderstanding of the statutory law and the facts that apply to this case that that this court should should send it back thank you thank you we'll adjourn court and come down recouncil this honorable court stands adjourned sign and die God save the United States and this honorable court
judges: J. Harvie Wilkinson III, Pamela A. Harris, A. Marvin Quattlebaum Jr.